BARNES, J.,
concurring in part, dissenting in part.
¶ 19. Although I concur with the majority that the trial court erred in granting summary judgment to TCA Cable Partners (TCA), I must respectfully dissent with the majority’s decision to reverse and render judgment awarding Entergy Mississippi, Inc. (Entergy) attorneys’ fees, pre- and post-judgment interest and costs of court. I am of the opinion that the case should be reversed and remanded for further proceedings as Entergy has not yet proved it is entitled to a judgment as a matter of law against TCA.
¶ 20. There are three contractual provisions at issue in the case before us: the preamble to the Agreement which states that “complete indemnification of Licensor [Entergy] is contemplated hereunder[,]” Section 10 which provides for indemnification against any “claims and demands for damages[,]” and Section 11 which requires TCA to maintain and furnish evidence of comprehensive general liability (CGL) insurance. The majority reads these provisions together to find an “obligation to indemnify and defend” Entergy from the claims asserted by Troy P. Cremeen. I disagree. While the parties may have intended for Sections 10 and 11 to work together to provide “complete indemnification,” I find that we must review the clauses as written. The Agreement makes no reference to a duty by TCA to defend Entergy against claims made. Entergy may be entitled, after further proceedings, to the amount expended in attorneys’ fees as damages against TCA for breach of the duty to provide CGL insurance or the duty *290 of good faith and fair dealing. However, I cannot agree that Entergy is entitled, at this juncture, to attorneys’ fees against TCA under a duty to defend.
I. Section 10 Indemnity Provision
¶ 21. Section 10 of the Agreement stated that TCA had an obligation to “indemnify, protect and save harmless [Entergy] from and against any and all claims and demands for damages to property and injury or death to any person ... caused by the erection, maintenance, presence, use or removal of said attachments or by the proximity of the respective cables, wires, apparatus and appliances of the parties .... ” This obligation extended to “any such damages, injury or death claimed to have been due to [the] negligence of [En-tergy]” that was caused by “any act of [TCA] on or in the vicinity of [Entergy]’s poles[.]”
¶ 22. As Entergy was dismissed from the original complaint, and no legal liability was established with respect to Cre-meen’s claims against Entergy, the only issue remaining in regard to the indemnification clause is whether it covered Enter-gy’s attorneys’ fees, from the point when TCA became a party to the suit. Entergy states that it incurred $29,642.84 in attorneys’ fees for the defense of the claims arising from the underlying claims asserted by Cremeen. The trial court’s order stated that the Agreement failed to contemplate attorneys’ fees; therefore, summary judgment for TCA was warranted.
¶ 23. Entergy cites Blain v. Sam Finley, Inc., 226 So.2d 742 (Miss.1969) for the “general rule” regarding indemnification for attorneys’ fees. In Blain, the Mississippi Supreme Court stated:
As a general rule an indemnitee is entitled to recover, as a part of the damages, reasonable attorneys’ fees and reasonable and proper legal costs and expenses which he is compelled to pay as a result of suits by or against him in reference to the matter against which he is indemnified, provided that under all of the circumstances of the case he acts in good faith and with due diligence in prosecuting or defending such suits. This rale is especially applicable where the indemnitor is notified and given an opportunity to contest the adverse litigation but fails or refuses to do so....
Id. at 745-46. I note, however, that the supreme court explained that “[w]hen the contract expressly indemnifies a person against the costs and expenses incident to certain acts, or arising from a certain claim, it extends to the costs and expenses of defending groundless suits.” Id. at 745 (citing B & G Elec. Co. v. G.E. Bass & Co., 252 F.2d 698, 701 (5th Cir.1958)) (emphasis added). I find Blain distinguishable as the contract at issue in that case expressly referred to expenses and attorneys’ fees. There is no such express provision in the Agreement at issue in the case before us.
¶ 24. Entergy argues that even if this Court does not follow the “general rule” set forth in Blain, the preamble to the Agreement contemplated “complete indemnification”; therefore, the payment of attorneys’ fees is warranted. “Where there is an indemnification agreement, ‘it is the parties’ intent which controls the propriety of attorney fees.’ ” Microtek Med., Inc. v. 3M Co., 942 So.2d 122, 128(¶ 17) (Miss.2006) (overruled on other grounds) (citations omitted).
¶ 25. However, the Mississippi Supreme Court has also stated: “[O]ur concern is not nearly so much what the parties may have intended as it is what they said, for the words employed are by far the best resource for ascertaining intent and assigning meaning with fairness and accuracy.” Sanderson Farms, Inc. v. Gatlin, 848 So.2d 828, 836(¶ 20) (Miss.2003). Mississippi “follows the American rule re *291 garding attorney fees,” which states that “[u]nless there is a contractual provision or statutory authority providing for attorney fees, they may not be awarded as damages unless punitive damages are also proper.” Kennedy v. Anderson, 881 So.2d 840, 348(¶ 36) (Miss.Ct.App.2004). Therefore, “unless provided by statute or contract ... attorneys’ fees may not be recovered.” Tupelo Redevelopment Agency v. Gray Corp., 972 So.2d 495, 517(¶ 68) (Miss.2007).
¶26. In Kinsinger v. Taco Tico, Inc., 861 So.2d 669, 673 (La.Ct.App.2003), the Louisiana Court of Appeals stated:
We agree that an indemnification agreement may impose the obligation to pay reasonable attorney fees in some instances when the obligation to pay attorney fees is not specifically identified in the indemnification agreement, but is implied by inference. However, we hold that in order for the indemnitor to be liable for attorney fees the indemnification language must be sufficient to infer the obligation.
In other words, the indemnification language must imply a level of indemnification beyond just the obligation to pay claims or damages. Id. In Kinsinger, the indemnification language only stated that the indemnity was for “any claims or damages” and failed to specify a duty to defend or pay expenses. Id. at 671-72. The appellate court concluded that the “limited indemnification language” of the contract at issue did not impose an “obligation to pay attorneys fees[,]” relying on the general rule that, absent a specific provision or language in the indemnification contract, attorneys’ fees and defense costs are not owed. Id. at 673.
¶ 27. The indemnification language contained in Section 10 of the Agreement, like the language in Kinsinger, refers only to indemnification from “claims and damages.” Consequently, I find, as did the trial court, that such language does not impose an obligation on the part of TCA to pay attorneys’ fees under this provision. Although the preamble to the Agreement stated that “complete indemnification” was contemplated, I find this language insufficient to expand the limited provision of Section 10, which negates any implication of an inclusion for attorneys’ fees. Therefore, I would affirm the trial court’s findings on this issue.
II. The Section 11 Provision of CGL Insurance
¶28. Entergy next argues that TCA clearly breached its contractual duty by not providing evidence of the CGL insurance policy, as required by the Agreement, and requests that this Court reverse and render on the issue of insurance coverage. The trial judge failed to address this issue which TCA maintains was moot based on the granting of summary judgment in its favor. I agree with the majority that TCA’s argument is misplaced. The Alabama Supreme Court has noted that:
A contractual obligation to indemnify is distinct from a contractual obligation to procure insurance. Under an agreement to indemnify, the promisor assumes liability for all injuries and damages upon the occurrence of a contingency. In contrast, an agreement to obtain insurance involves the promisor’s agreement to obtain or purchase insurance coverage, regardless of whether [a] contingency occurs.
Goodyear Tire & Rubber Co. v. J.M. Tull Metals Co., 629 So.2d 633, 639 (Ala.1993) (emphasis added).
¶29. Section 11 of the Agreement states in pertinent part:
Licensee shall effect, maintain and furnish evidence of insurance satisfactory to the Licensor ...:
*292 (b)(1) Comprehensive General Liability Insurance including Contractual Liability Coverage and Personal Injury Coverage.
(c) Licensee’s insurance policy required by paragraph (b) above shall name Li-censor, and its affiliated and associated companies as additional insureds. Licensee hereby waives all rights of recourse against Licensor, and its affiliated and associated companies for bodily injury, including death and property damage. All of Licensee’s policies of insurance are to provide Licensor with 30 days prior written notice of cancellation or any material adverse change. Licensee shall, before making any attachments to poles of Licensor hereunder, provide Licensor with Certificates of Insurance upon execution of the Agreement which shall include the type of policy issued, occurrence or claims made, and specifically address that the required endorsements are provided (i.e., additional insureds and waiver of subrogation.).
TCA claims that Entergy must have been provided with certificates of insurance at the execution of the Agreement; otherwise, Entergy would not have continued with the Agreement. It is disingenuous for TCA to claim that it was not obligated to provide a copy of the entire policy, rather only the certificate of insurance, and then decline to furnish that certificate based upon its contention that Entergy should already have the certificate in its possession. Any such certificate would have been dated approximately fifteen years prior to the claims asserted here. I agree with the majority that “[t]he law of Mississippi imposes an obligation of good faith and fundamental fairness in the performance of every contract governed thereby[.]” Vicksburg Partners, L.P. v. Stephens, 911 So.2d 507, 525(¶ 47) (Miss.2005) (quoting Bank of Indiana, Nat’l Ass’n v. Holyfield, 476 F.Supp. 104, 109 (S.D.Miss.1979)); see also Baker, Donelson, Bearman & Caldwell, P.C. v. Muirhead, 920 So.2d 440, 451(¶ 40) (Miss.2006) (“[t]he duty of good faith and fair dealing attends all contracts interpreted under Mississippi law”). For TCA to withhold the policy, which should have been readily available, may be a violation of its good faith obligation as a contracting party and may subject TCA to damages for that breach if it is now too late for Entergy to file a claim under the policy. I cannot see, however, that it transforms TCA into the insurer.[3]
¶ 30. The majority cites Travelers Ins. Co. v. General Refrigeration & Appliance Co., 218 So.2d 724, 727 (Miss.1969), for the proposition that when there is a contractual duty to defend, the insured is entitled to “all reasonable and necessary expenses” in fulfilling that obligation. However, I find Travelers distinguishable from the present case in that it directly involved the insurance company, and the terms of the policy were provided in the record. Consequently, the supreme court was able to ascertain Traveler’s contractual duty under the policy’s terms. In this case, there is no evidence of a contractual duty of TCA to defend Entergy; no insurer was a party to the litigation, and no policy has been admitted into evidence to identify the obligations of the insurer carrier.
¶ 31. Under Section 11 of the Agreement, Entergy was to be named as an *293 additional insured under the CGL insurance policy, and it was to be provided proof of such policy. The Agreement did not require TCA to serve as the insurer. However, the record fails to show whether TCA complied with its contractual duties to provide CGL insurance with Entergy named as an additional insured. Due to this lack of evidence, I conclude that neither TCA, nor Entergy, has proved any entitlement to a judgment as a matter of law.
¶ 32. If TCA did not, in fact, obtain the CGL insurance as required by the Agreement, or if its refusal to provide information required for Entergy to file a claim under the policy precludes Entergy’s recovery, TCA may be liable for the costs of defense as damages for breach of contract. However, I cannot hold TCA hable for failing to defend Entergy. Therefore, I would reverse and remand on this issue for further proceedings by the trial court.
KING, C.J., IRVING, AND ROBERTS, JJ„ JOIN THIS OPINION.

. I cannot agree with the majority that TCA’s withholding of the policy "should be considered a sanctionable event” under the facts of this case. Entergy merely sent an informal request for the policy to TCA; it never utilized the discovery procedures outlined in the Mississippi Rules for Civil Procedure. Accordingly, Entergy could not seek sanctions for violation of the rules.