881 So.2d 840 (2003)
Angela Leann GREGORY, Appellant,
v.
Daniel C. GREGORY, Appellee.
No. 2001-CA-01978-COA.
Court of Appeals of Mississippi.
November 18, 2003.
Rehearing Denied March 16, 2004.
*842 Jak McGee Smith, Tupelo, attorney for appellant.
Will R. Ford, attorney for appellee.
Before SOUTHWICK, P.J., THOMAS and IRVING, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. Leann and Daniel Gregory were granted a divorce by the Pontotoc County Chancery Court. Mrs. Gregory appeals, alleging error in granting a divorce to her husband based on her alleged habitually cruel and inhuman treatment as opposed to basing the divorce on her husband's alleged adultery, in permitting her husband to have unrestricted visitation with their son, and in requiring her to pay attorney's fees. We agree that insufficient evidence was presented to prove habitual cruel and inhuman treatment. We reverse the judgment and remand for further proceedings.

STATEMENT OF FACTS
¶ 2. Leann and Daniel Gregory were married in June 1995. The couple separated three times. Their final separation began in May 1999. In July 2000, Mrs. Gregory filed for a divorce. She alleged as grounds adultery, habitual cruel and inhuman treatment, and in the alternative, sought a divorce based on irreconcilable differences. Mr. Gregory filed an answer and a counter complaint alleging adultery, habitual cruel and inhuman treatment, and irreconcilable differences.
¶ 3. The couple has two sons, the younger being born after the 1999 separation. Mrs. Gregory sought custody of the children. A temporary order granted her custody, and it allowed Mr. Gregory to have visitation.
*843 ¶ 4. During the separation, Mrs. Gregory testified that she began to suspect that her husband was sexually abusing their older son. The child was four years old at the time. Mrs. Gregory claimed that the child began to touch her inappropriately after he would return from visits with his father. Mrs. Gregory took her son to the family doctor for an examination. She also made a report with the Department of Human Services. She stated that her son told her that Mr. Gregory had "put his finger up his booty." After this statement in March of 2001 and allegedly on advice of counsel, she ended visitation between her son and his father.
¶ 5. Mr. Gregory was arrested and charged with sexual abuse. A guardian ad litem was appointed on behalf of the older son. During the divorce hearing, both parents presented evidence concerning this allegation of abuse. Mrs. Gregory presented testimony of Dr. Gary Moores. He has a Ph.D. in social work and testified as an expert. Based on interviews he conducted with the older Gregory son, he concluded that the child had been sexually abused. Mrs. Gregory was present when the child told Dr. Moores that his father "put his finger up his booty." Dr. Moores provided counseling to the child as a favor to a friend of Mrs. Gregory's family.
¶ 6. Dr. Dale Wing, an expert in the area of family medicine also testified. He had conducted a physical examination on the child in December 2000. He found no physical evidence of sexual abuse. After seeing the child again in May of 2001, he concluded there had been sexual abuse. He did not do a physical exam and his conclusion was based on statements made by the child. Mrs. Gregory's father had taken the child to the doctor and the statements were made in his presence.
¶ 7. Mrs. Gregory also presented testimony from Dr. Marilyn Snow. She is a "play therapist" with a Ph.D. in counseling. She was recognized as an expert in the area of counseling. She interviewed the boy and believed that he had been sexually abused. She stated that she always errs on the side of the child. Since this child had stated he had been abused, she assumed he had been.
¶ 8. Mr. Gregory called Dr. Louis Masur to testify as an expert on his behalf. Dr. Masur is a clinical psychologist. He had two interviews with the older Gregory son. The first was in April 2001. The boy stated in his mother's presence that his father "put his finger up his booty." Dr. Masur testified that the child could have confused a doctor's examination with something that his father did. He also stated that the child could say what the mother wants him to say in her presence and what the father desired when in his presence.
¶ 9. The court ordered Dr. Masur to observe the child interact with Mr. Gregory. This took place in June 2001. During this visit, Dr. Masur observed no problems between the father and son. The child willingly sat on his father's lap and led the conversation between the two for the majority of the visit. The doctor observed that the child seemed happy. He was not upset or concerned when Mrs. Gregory left the room. Dr. Masur thought the child did not notice who was coming in and out of the room because he was so absorbed with his father. Dr. Masur, while unable to give an opinion whether abuse had occurred, found that this was evidence that no abuse had occurred. He testified that the only evidence of abuse was the child's statement.
¶ 10. The court granted a divorce to Mr. Gregory on the basis that his wife's allegations of child abuse were intentionally false. According to the court, this constituted habitual cruel and inhuman treatment. *844 The court found that the child was not sexually abused by Mr. Gregory.
¶ 11. Mrs. Gregory presented some evidence that Mr. Gregory had been unfaithful during the marriage. She claims that he was in a hotel with another woman and that he admitted to her that he was having an affair with this woman. A former friend of Mr. Gregory testified that he knew of an affair between Mr. Gregory and another woman. Mr. Gregory stated that this relationship did not begin until after he and Mrs. Gregory were separated in May 1999. The chancellor found that since the adultery was not the cause for the separation, she would deny a divorce on this ground.
¶ 12. Mrs. Gregory was found in contempt of court for ending visitation. The court ordered that Mrs. Gregory pay her husband's attorneys' fees, which were found to total $9,013.98 including court costs. Mrs. Gregory was also ordered to reimburse Mr. Gregory $1,500 for the fees of the guardian ad litem. Mrs. Gregory has appealed.

DISCUSSION

1. Evidence of sexual abuse
¶ 13. We have already detailed the evidence about abuse. On fact-findings, the chancellor will be upheld unless the court's actions were manifestly wrong, the court abused its discretion or it applied an erroneous legal standard. Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997).
¶ 14. The chancellor heard the contested testimony presented on the question. Based on this testimony, she concluded the child had not been sexually abused. There is evidence on the record to support this finding. Apparently the testimony of Dr. Masur was persuasive. Dr. Masur suggested explanations for the child's statements and actions other than the occurrence of abuse.
¶ 15. This is the kind of difficult factual determination that chancellors are in a far better position to make than is an appellate court reviewing a cold printed record. We find no basis on which this determination should be disturbed.

2. Habitual cruel and inhuman treatment
¶ 16. Having found that no abuse of the child had occurred, the chancellor then found that the charges were made without foundation. The husband's assertion that this claim constituted habitual cruel and inhuman treatment was sustained. Divorce was granted on this basis.
¶ 17. We have upheld that chancellor's fact-findings regarding the abuse. What we do not find supported in the record is meaningful evidence that even if the claim was untrue, that it was a fabrication by Mrs. Gregory intended in a cruel and inhuman way to injure her husband. Dr. Masur's testimony, which was supportive of the position that no abuse occurred, was not supportive of the belief that the instigator of the story was Mrs. Gregory. For example, the child's statement that his father had improperly touched him was found just as likely to have been confusion by the four year old boy with a rectal exam that had been performed by a physician.
¶ 18. There is at least one precedent in which false allegations of sexual abuse were found to be so groundless as to qualify them as being habitual cruel and inhuman treatment. Richard v. Richard, 711 So.2d 884, 887 (Miss.1998). There, older teenage children denied that any abuse had ever occurred, yet the wife continued to accuse the husband of abuse. Id. at 889. If there was evidence, even if only circumstantial, that Mrs. Gregory created *845 the story and coached her son regarding what to say, a basis for a divorce might be shown.
¶ 19. Opinions of reputable doctors and specialists were that the boy had been abused, and that the child had not been instructed on what to say. Mrs. Gregory became concerned when her four year old son began to behave strangely and make strange comments. We conclude that since the chancellor found that the incorrect claim of abuse was habitual cruel and inhuman treatment, that the chancellor found that Mrs. Gregory must have concocted the entire matter.
¶ 20. This Court will not reverse a chancellor's decree of divorce unless it is manifestly wrong as to law or fact. Bland v. Bland, 620 So.2d 543, 544 (Miss.1993). There was insufficient evidence, direct or circumstantial, that Mrs. Gregory made knowingly false claims of abuse. Further, we hold as a matter of law that honestly made claims, even when later found to have been erroneous, do not constitute habitual cruel and inhuman treatment. Though Mrs. Gregory may have willingly caused trouble for her husband which led to his arrest, the obligation of a parent to confront reasonably suspected abuse cannot become cruelty or inhumanity.
¶ 21. We set aside the divorce based on this ground. Having urged this course, Mrs. Gregory also has argued that we should now grant her a divorce based on her husband's adultery. The chancellor rejected this basis for a divorce as she found that the only credible proof established the adultery occurred after the May 1999 separation. Therefore, the court concluded adultery could not have been the cause of the end of the marriage. We note, though, that the allegations of child abuse also did not occur until after the May 1999 separation. It has recently been determined that it is not necessary for a divorce based either on adultery or cruel and inhuman treatment, that the conduct have occurred before the parties' separation. Talbert v. Talbert, 759 So.2d 1105, 1110-11 (Miss.1999). The court should consider the offending conduct, even if it occurred during separation, and its impact on the other spouse. A separation need not be final. Something that occurs during separation could factually be found to have eliminated whatever opportunity might have existed that the spouses could be reconciled over the initial cause of the separation. Id. at 1110. Any absolute rule that conduct during a separation is to be ignored may reject the factually convincing cause of the parties' final and permanent separation, as opposed to their initial and temporary separation.
¶ 22. Mrs. Gregory presented evidence that Mr. Gregory had been unfaithful during their marriage. There was contrary evidence and explanations. We will not become fact-finders on appeal. We remand that issue for consideration by the lower court.
¶ 23. Both parties alleged irreconcilable differences as an alternative grounds for divorce in their respective complaints. It might be argued that since both parties want a divorce, that once we have found insufficient support for one of the fault-based grounds for divorce, we should just decree a divorce based on irreconcilable differences. However, under this statute, all matters concerning child custody, child support and the settlement of all property rights must first be addressed. The parties must either enter into a "written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties," or submit to the court for resolution what cannot be agreed. Miss.Code Ann. § 93-5-2(2) *846 (Rev.1994). The Supreme Court has found the statutory provision for a written agreement on such matters to be mandatory. Cook v. Cook, 725 So.2d 205, 207 (Miss.1998). The Court has also found that when both spouses denied in their complaints that the other spouse was entitled to a divorce based on irreconcilable differences, this negates the needed mutual consent for a divorce on this basis. Massingill v. Massingill, 594 So.2d 1173, 1178 (Miss.1992). Such a denial was made in each of the complaints by the Gregorys.

3. Visitation
¶ 24. Since we have upheld the chancellor's finding that no abuse of the child had occurred, we find no error in the permitting of liberal visitation to the father. However, the divorce itself has been set aside. On remand, visitation will again need to be addressed if a divorce is granted.

4. Payment of father's legal expenses
¶ 25. The chancellor required that the mother pay approximately $9,000 in legal fees and expenses incurred by the father. We will examine the grounds on which this was done.
¶ 26. The chancellor used this statute as authority for awarding attorney's fees:
If after investigation by the Department of Human Services or final disposition by the youth court or family court allegations of child abuse are found to be without foundation, the chancery court shall order the alleging party to pay all court costs and reasonable attorney's fees incurred by the defending party in responding to such allegation.
Miss.Code Ann. § 93-5-23 (Rev.1994). These charges were not shown, to use the statutory language, to have been "without foundation."
¶ 27. Another statute cited by the chancellor is this:
Except as otherwise provided in this chapter, in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorney's fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure.
Miss.Code Ann. § 11-55-5(1) (Rev.2002). Here, too, the extreme nature of the conduct required for this statute to be invoked has not been shown.
¶ 28. Besides relying on these statutes, the chancellor found Mrs. Gregory to be in contempt of court for violating the temporary order on visitation. When a party is held in contempt for violating a valid judgment of the court, attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment. Varner v. Varner, 666 So.2d 493, 498 (Miss.1995). The visitation order that Mrs. Gregory violated was a temporary order of October 2000. Visitation between the father and the son occurred until March 2001. In the latter month, the child allegedly told his mother that Mr. Gregory "put his finger up his booty." On advice from her attorney, Mrs. Gregory terminated visitation.
¶ 29. The chancellor never made a finding that Mrs. Gregory had fabricated the *847 charges and had in some manner convinced the child to make the statements that he did. That may be a factor in addressing the significance of the contempt. What might also be a factor is that Mrs. Gregory filed a motion within days of allegedly hearing her son make this claim, seeking an end to the unsupervised visitation. By seeking the immediate assistance of the court, Mrs. Gregory was pursuing what remedy was available. Nonetheless, we find that an award of some amount of fees incurred by Mr. Gregory allocable to enforcing the visitation order may be supportable. A finding of contempt must first be made. We reverse the award made so far, which is based on a greater range of inappropriate conduct than we are sustaining, and remand for further consideration.
¶ 30. THE JUDGMENT OF THE CHANCERY COURT OF PONTOTOC COUNTY IS REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.