# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01216-COA

**JARED SCOTT BAUMANN**                                        **APPELLANT**

**v.**

**ANGIE POTTER BAUMANN**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/02/2019 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | DEBRA LYNN ALLEN |
| ATTORNEYS FOR APPELLEE: | WILLIAM R. WRIGHT |
| | AMANDA JANE PROCTOR |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 09/29/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Jared Baumann appeals from the judgment of the Hinds County Chancery Court, claiming the chancellor erred by failing to address each *Albright* factor, qualifying Angie's expert, ordering back child support, and denying his attorney's fees. Finding no reversible error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2.     Jared and Angie Baumann were married on March 20, 2009. They had two children, I.B. and M.B.G., before they separated.[1] Jared filed for divorce from Angie on the statutory

---

[1] We use initials to protect the identities of the minor children.

ground of habitual cruel and inhuman treatment or, alternatively, on the ground of irreconcilable differences. He also filed for a temporary restraining order and injunction, asking the chancery court to order Angie to return the children to Mississippi. At the time of their separation, Angie and the children were staying with Angie's parents in Utah. The chancery court granted Jared's temporary restraining order and ordered Angie to return the children to Mississippi within seventy-two hours.

¶3. Instead of following the court's orders, and while their divorce was pending in Mississippi, Angie filed for divorce in Utah. She alleged that Jared had sexually abused their eldest daughter, I.B. Angie consulted with a clinical social worker, who determined that I.B. displayed characteristics of a sexually abused child.

¶4. On June 6, 2014, Jared filed a motion for contempt due to Angie's refusal to return the children to Mississippi. Shortly after, on June 11, 2014, Angie filed her answer and defenses to Jared's divorce complaint in Mississippi. One of Angie's defenses was that the Mississippi court lacked subject matter jurisdiction based on the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Miss. Code Ann. § 93-27-201 (Rev. 2013). Eight months later, after various hearings, the two courts came to a decision resulting in the dismissal of the Utah divorce pleadings. Based on this agreement, the Utah court also dismissed the Utah protective order. The Utah court found that all allegations should be referred to the Mississippi Department of Human Services. Although no charges were brought against Jared in Mississippi, the chancellor agreed with the Utah judge. She ordered the Department of Human Services to investigate all allegations of sexual abuse.

¶5.    In early December 2014, Jared filed a second motion for contempt and a temporary restraining order. Specifically, on December 23, 2014, Jared filed a motion requesting an immediate investigation into the false charges of child abuse. He also asked that Angie pay for any attorney's fees used to defend the charge. At that time, the chancellor appointed a guardian ad litem (GAL).

¶6.    In March 2015, the GAL gave her initial recommendations as to temporary custody. She recommended that the children temporarily remain with Angie because the sexual abuse accusations were still pending.

¶7.    At trial, Angie presented Karen Fairchild as her expert witness. Fairchild had meet with I.B. several times and opined that she demonstrated signs of sexual abuse. Jared continued to deny any abuse, and investigations by both the appointed GAL and Department of Human Services failed to substantiate the allegations.

¶8.    On March 16, 2016, the chancellor granted Jared and Angie's divorce on the ground of irreconcilable differences. Angie sought sole physical and legal custody of their children with restricted or supervised visitation for Jared. The chancellor accepted the GAL's extensive report and recommendation and awarded physical custody of I.B. and M.B.G. to Angie. However, the chancellor awarded unsupervised visitation to Jared. Jared was also ordered to pay arrearage for child support from January 2015. The chancellor furthered order both parties to pay their respective attorney's fees.

¶9.    Jared filed a motion for a new trial or, alternatively, to amend the judgment. The chancellor denied a new trial but amended the judgment to reflect that child-support

arrearage should be paid starting from April 2015 instead of January 2015. Aggrieved by the chancellor's decision, Jared appeals.

## STANDARD OF REVIEW

¶10.    This Court will not reverse a chancery court's decision unless the chancellor abused her discretion, was manifestly in error, or applied an erroneous legal standard. *Pevey v. Pevey*, 270 So. 3d 250, 257 (¶18) (Miss. Ct. App. 2018). The evidence cannot be re-weighed in a child custody case, and the Court must defer to the chancellor's finding. *Hardin v. Scarborough*, 240 So. 3d 1246, 1251 (¶9) (Miss. Ct. App. 2018). As long as a chancellor's findings of fact are supported by substantial credible evidence, they will remain undisturbed on appeal. *Pevey*, 240 So. 3d at 257.

## DISCUSSION

### I.    Whether the chancellor properly determined child custody.

¶11.    Jared claims the chancellor erred by granting custody of his minor children to his ex-wife, Angie. He contends that the court's determination should be vacated because the chancellor adopted the GAL's recommendation and did not address each *Albright*[2] factor. He also argues that the chancellor failed to give enough weight to the harm he and his daughter, I.B., suffered because of Angie's abuse allegations.

¶12.    It is well established that the child's best interest and welfare are the guiding points in child custody cases. *Albright*, 437 So. 2d at 1005 ("[T]he polestar consideration . . . is the best interest and welfare of the child."). To meet these goals, the Court evaluates the

---

[2]*Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

4

following factors introduced in *Albright*: (1) the age, sex, and health of the child; (2) "the continuity of care prior to the separation"; (3) the parenting skills of each parent; (4) "the willingness and capacity to provide primary child care"; (5) "the employment of the parents and the responsibilities of that employment"; (6) the "physical and mental health and age of the parents"; (7) "emotional ties of the parent and the child"; (8) the moral fitness of each parent; (9) "the home, school, and community record of the child"; (10) the preference of the child; (11) the stability of the home environment; and (12) "other factors relevant to the parent-child relationship." *Id*.

¶13.    "The *Albright* factors are intended to ensure that the chancellor follows a process that considers all facts relevant to the child's best interest." *Vassar v. Vassar*, 228 So. 3d 367, 375 (¶27) (Miss. Ct. App. 2017). Although all the factors are essential, the chancellor has the ultimate discretion to weigh the evidence the way she sees fit. *Johnson v. Gray*, 859 So. 2d 1006, 1013-14 (¶36) (Miss. 2003). However, the chancellor must explain her rationale. If a chancellor fails to articulate the reasoning behind her findings, it is reversible error. *Davidson v. Coit*, 899 So. 2d 904, 911 (¶18) (Miss. Ct. App. 2005).

¶14.    We give deference to the weight that the chancellor assigns to each *Albright* factor. *Smith v. Smith*, 206 So. 3d 502, 513 (¶24) (Miss. 2016). This Court cannot re-weigh the evidence and must defer to the chancellor's findings of facts, including her decision regarding the evidence's weight and credibility. *Hall v. Hall*, 134 So. 3d 822, 828 (¶21) (Miss. Ct. App. 2014); *accord Alderson v. Alderson*, 810 So. 2d 627, 629 (¶4) (Miss. Ct. App. 2002). An appellate court may not substitute its judgment for the chancellor's. *Brewer*

5

*v. Brewer*, 919 So. 2d 135, 141 (¶23) (Miss. Ct. App. 2005). Instead, we must decide if substantial evidence supports the ruling. *Id.*

¶15. In *Barbaro*, we upheld a chancellor's judgment even though he did not give reasons for disagreeing with certain parts of the GAL's recommendation. *Barbaro v. Smith*, 282 So. 3d 578, 600 (¶101) (Miss. Ct. App. 2019). Barbaro alleged that Smith, her ex-husband, had allowed their eighteen-month-old child to consume drugs. *Id*. at 583 (¶1). She submitted a false drug test and set up a scheme to have Smith arrested for drug trafficking. *Id*. at 588 (¶35). Smith denied that he had ever exposed their son to drugs. *Id*. at 583 (¶1). Accordingly, the chancellor appointed a GAL to investigate the allegations. *Id*. The investigation concluded that Barbaro altered the drug test and planted the drugs that led to Smith's arrest. *Id*. at (¶¶1-2).

¶16. Based on the investigation, the GAL recommended that custody be given to Smith. *Id*. at (¶2). The chancellor agreed and granted sole physical and legal custody to Smith and gave Barbaro visitation. *Id*.

¶17. On appeal, Barbaro argued that the chancellor failed to detail why he disagreed with the GAL's report. *Id*. at 600 (¶99). Although the chancellor expressed that he "disagreed with the Guardian ad Litem's *Albright* analysis," we held that he was not required to give a reason unless his ruling was contrary to the GAL's ultimate recommendation. *Id*. at 600 (¶101).

¶18. Like *Barbaro*, a review of the record shows that the chancellor properly considered all evidence and testimony before her. In her opinion, the chancellor adopted the appointed

6

GAL's recommendation and reasoning. Although she did not personally address each point, she relied upon and adopted the extensive reasoning of the appointed GAL, providing additional explanation for two of the twelve factors. She properly articulated her rationale and concluded by awarding custody to Angie.

¶19.	As to Jared's argument that the chancellor did not give enough weight to the harm he and I.B. suffered due to these allegations, we give deference to the weight that the chancellor assigned to each *Albright* factor. This Court does not re-weigh the evidence.

¶20.	In considering the best interest and welfare of the children, I.B. and M.B.G., the record establishes that substantial credible evidence supported the chancellor's ruling. Accordingly, we affirm the chancellor's judgment on this issue.

**II.	Whether the chancery court erred by allowing Karen Fairchild to testify as an expert.**

¶21.	Jared claims that I.B.'s counselor, Karen Fairchild, should not have been allowed to testify as an expert witness. He takes issue with whether Fairchild was "qualified" to testify as an expert under Mississippi Rule of Evidence 702. Jared argues that Fairchild was not offered as a specialist in any specific area of expertise that would be helpful to the trier of fact. He also suggests that Fairchild's testimony should have been vetted through a *Daubert*[3] hearing Angie failed to schedule.

¶22.	Whether expert testimony is admitted falls within the chancellor's discretion. *Bateman v. State*, 125 So. 3d 616, 625 (¶28) (Miss. 2013). In other words, as the trier of fact, the chancery court has the primary authority and responsibility to assess the credibility of

---

[3] *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993).

witnesses. *Morris v. Morris*, 783 So. 2d 681, 687 (¶18) (Miss. 2001). An appellate court will not reverse a chancery court's decision to admit expert testimony unless that determination is clearly erroneous and arbitrary, leading to an abuse of discretion. *Gray v. State*, 202 So. 3d 243, 256 (¶46) (Miss. Ct. App. 2015). Furthermore, the "widest possible discretion" is given to a chancery court's decision on whether a witness is qualified to testify as an expert. *Jones v. Jones*, 43 So. 3d 465, 484 (¶53) (Miss. Ct. App. 2009).

¶23.    Jared argues that Angie had a "duty to set a *Daubert* hearing" because she was the "proponent of the expert testimony." However, Jared misunderstands Mississippi's requirements. An actual hearing is not a requirement to satisfy *Daubert*. *Jones*, 43 So. 3d at 484 (¶53); *see also Edmonds v. State*, 955 So. 2d 787, 792 (¶10) (Miss. 2007). Under the law, as long as both parties have an opportunity to be heard before the chancery court makes a decision, the basic requirement is met. *Edmonds*, 955 So. 2d at 792 (¶10).

¶24.    Once Jared's attorney objected on the grounds of *Daubert*, the chancellor gave Jared's attorney the chance to be heard as to why Fairchild should not be qualified as an expert. At that point, the chancellor also articulated that while Fairchild lacked specific proficiencies, her expertise was enough to testify as an expert.

¶25.    *Daubert* requires judges to safeguard proceedings by verifying that an expert's testimony is relevant and reliable. *Jones*, 43 So. 3d at 484 (¶54). Whether the evidence is relevant and admissible is within the discretion of the chancery court. *Johnston v. State*, 567 So. 2d 237, 238 (Miss. 1990). However, this discretion must operate within the perimeters of the Mississippi Rules of Evidence and Mississippi caselaw. *Id*.

¶26.    The admissibility of expert testimony falls under Rule 702 of the Mississippi Rules of Evidence. It states in relevant part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

M.R.E. 702.

¶27.    Rule 702 provides a two-part test to use when assessing the admissibility of expert testimony. *Watts v. Radiator Spec. Co.*, 990 So. 2d 143, 146 (Miss. 2008). The analysis provided in *Daubert* and later modified in *Kumho Tire Co.*[4] asks "(1) whether the expert opinion is relevant in that it assist the trier of fact and (2) whether the proffered opinion is reliable." *Thomas v. Lewis*, 289 So. 3d 734, 740 (¶17) (Miss. 2019).

¶28.    Angie's counsel presented Karen Fairchild as an expert in child development and social work. Jared's attorney objected to Fairchild's being qualified as an expert. Although the chancellor found Fairchild's expertise "lacking in some regard," she found that Fairchild's knowledge was enough to allow her to testify as an expert in child development and social work.

---

[4] *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167, 1174 (1999).

¶29. The chancellor found that Fairchild was a licensed clinical social worker, who at the time of trial, had been licensed in Utah for four years. She had an Associate's and Bachelor's degree in child development and a Master's degree in social work. Fairchild had also roughly participated in play-therapy sessions and training since 2008. It is unclear exactly how many times Fairchild met with I.B.; however, she opined that I.B. showed signs of a child who had been sexually abused. Even though Fairchild gave this opinion at trial, both the GAL and the chancellor found the sexual-abuse allegations were unsubstantiated.

¶30. After reviewing the record, we find that the chancellor did not abuse her discretion by allowing Fairchild to testify as an expert. Accordingly, this issue is without merit.

**III.    Whether the chancery court erred by awarding child-support arrearage to Angie.**

¶31. Jared claims the chancellor erred by ordering child-support arrearage to his ex-wife, Angie. The chancellor found that Jared had not contributed financially to his children's care after the separation from Angie in May 2014.

¶32. Initially, in the final judgment of divorce, the chancellor ordered Jared to pay child-support arrearage for the period beginning in January 2015. Jared promptly requested a new trial or, in the alternative, an amended judgment. In support of his motion, Jared claimed that the court had failed to order child support in April 2015 and that Angie had failed to ask for "back child support." While Jared's assertion that Angie never requested child support is incorrect, the chancellor did amend the judgment. Finding that Angie filed her counterclaim and request for child support on March 24, 2015, and again on April 16, 2015, the chancellor found that Angie was entitled to child-support arrearage starting from April 1, 2015, not

10

January 2015.

¶33. Rule 8(a) of the Mississippi Rules of Civil Procedure requires a plaintiff to state "factual allegations, direct or [inferable], respecting each material element necessary to sustain recovery under some actionable legal theory." *Herrin v. Perkins*, 282 So. 3d 727, 733 (¶23) (Miss. Ct. App. 2019); *Welch Roofing & Const. Inc. v. Farina*, 99 So. 3d 274, 278 (¶12) (Miss. Ct. App. 2012).

¶34. Angie met the notice requirements when she filed her amended answer on March 24, 2015, and her second amended answer on April 16, 2015, where she requested child support in both. These documents gave Jared notice that Angie was seeking monetary support for their children.

¶35. As stated above, this Court will not overturn a chancellor's monetary order unless it is manifestly wrong, clearly erroneous, or applied with an improper legal standard. *Pevey*, 270 So. 3d at 257 (¶18); *Kelley v. Day*, 965 So. 2d 749, 754 (¶3) (Miss. Ct. App. 2007).

¶36. For the above reasons, this issue is without merit.

**IV. Whether the chancery court's denial of attorney's fees was proper.**

¶37. Finally, Jared claims the chancellor erred by not awarding attorney fees for his defense of the unsubstantiated abuse allegations.

¶38. Chancellors are in a far better position to make these kinds of challenging decisions. *Gregory v. Gregory*, 881 So. 2d 840, 844 (¶15) (Miss. Ct. App. 2003). Unless a chancellor commits a manifest error or abuses their discretion, an award of attorney's fees will remain undisturbed. *Stuart v. Stuart*, 956 So. 2d 295, 299 (¶20) (Miss. Ct. App. 2006). Where one

11

party's conduct has caused the opposing party to incur additional legal fees, attorney fees may be appropriately given. *Id*. However, a chancellor's decision to grant attorney's fees is entrusted mainly to her discretion. *Campbell v. Campbell*, 269 So. 3d 426, 431 (¶18) (Miss. Ct. App. 2018); *Evans v. Evans*, 75 So. 3d 1083, 1089 (¶22) (Miss. Ct. App. 2011); *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).

¶39.    Mississippi Code Annotated section 93-5-23 (Rev. 2018) states in relevant part that "[i]f after [an] investigation by the Department of Human Services . . . allegations of child abuse are found to be without foundation, the chancery court shall order the alleging party to pay all court costs and reasonable attorney's fees incurred by the defending party in responding to such allegations."

¶40.    In *Gregory*, a mother claimed the father sexually abused their child. *Gregory*, 881 So. 2d at 843 (¶4). At trial, both sides presented their respective experts. *Id*. at 843 (¶¶6-7). Ultimately, the chancellor found the allegations to be unsubstantiated. *Id*. at 844 (¶10). The mother was ordered to pay about $9,000 in legal fees and expenses. *Id*. at 846 (¶25).  This court reversed because there was no finding the mother had "fabricated the charges" or coached her son. *Id*. at 847 (¶29).  Specifically, she was "pursing what remedy was available." *Id*. Furthermore, we held that the statue requires extreme conduct and that conduct level had not been invoked.  *Id*. at 846 (¶27).

¶41.    In *Garner v. Garner*, 283 So. 3d 120, 128 (¶12) (Miss. 2019), a mother accused her child's uncle of inappropriately touching him while in the bathtub. The child's uncle had also initiated abuse allegations against the mother. *Id*. As a result, the court-appointed a Guardian

ad Litem and placed the minor in foster care. *Id*. After separate investigations, both abuse allegations were deemed unsubstantiated. *Id*. More importantly, Child Protective Services determined that "there were no inappropriate actions on behalf of [the uncle]."*Id*.

¶42.    Unlike *Gregory*, the chancellor in *Garner* found that the mother's behavior was the exact extreme conduct that section 93-5-23 anticipates and hopes to prevent. *Id*. at 143 (¶99); *Gregory*, 881 So. 2d at 846 (¶27). Specifically, proof at trial showed that the mother coached her son regarding the sexual abuse accusations. *Garner*, 283 So. 3d at 143 (¶104). Review of the record supported the chancellor's award of $6,942.50 in attorney's fees. *Id*.

¶43.    Like *Gregory* and *Garner*, the chancellor here heard the contested testimony presented on whether Jared had abused I.B. Based on this testimony, and the chancellor determined that the sexual abuse claims against Jared were unsubstantiated. Although there was no finding of sexual-abuse, the granting of attorney's fees are still within the judgment of the chancellor. *Campbell*, 269 So. 3d at 431 (¶18) (Miss. Ct. App. 2018). Therefore, the chancellor was well within her discretion to award [or not award] Jared's attorney's fees. Accordingly, this issue is without merit.

**CONCLUSION**

¶44.    Finding no reversible error, the judgment is affirmed.

¶45.    **AFFIRMED.**

    **BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**

13